# In the United States Court of Federal Claims

No. 19-937C

(Filed: October 17, 2019)

```
*****************************
                              *
LOOKS GREAT SERVICES, INC.,   *
                              *   Fifth Amendment Taking; Breach of
                   Plaintiff, *   Contract; Injunctive Relief; Post-Award;
                              *   RCFC 12(b)(1) and (b)(6); Motion to
v.                            *   Dismiss; Just Compensation; Subject-
                              *   Matter Jurisdiction; Contract Disputes
THE UNITED STATES,            *   Act.
                              *
                   Defendant. *
                              *
*****************************
```

*Lochlin B. Samples*, with whom were *Karl Dix, Jr.*, and *Parker A. Lewton*, Smith, Currie & Hancock LLP, Atlanta, Georgia, for Plaintiff Looks Great Services, Inc.

*Daniel K. Greene*, Trial Attorney, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *L. Misha Preheim*, Assistant Director, Commercial Litigation Branch, U.S. Department of Justice, Washington, D.C., and *Jim Weiner*, Assistant Solicitor, Acquisitions and Intellectual Property, U.S. Department of Interior, for Defendant.

OPINION AND ORDER

WHEELER, Judge.

This case presents a suitable law school exam question. Before the Court is the Government's motion under Rules 12(b)(1) and (6) to dismiss Plaintiff Looks Great Services, Inc.'s ("LGS") action brought against the National Park Service for its alleged breach of contract and taking of property without just compensation in violation of the Fifth Amendment. This dispute stems from a contract for the removal of a tree located on Government property once belonging to President Theodore Roosevelt. LGS's winning bid included a quote for only $0.01 for completion of this project. Despite its low bid, LGS claims that it expected to profit from this transaction because, after removing the tree, LGS planned to sell the wood due to its historical significance. The National Parks Service has

since informed LGS that it cannot remove the tree and allegedly permitted a third-party contractor to begin removing the tree. For the reasons stated herein, the Court GRANTS the Government's motion to dismiss Plaintiff's complaint.

## Background

The National Park Service issued Solicitation 0040424577 ("the solicitation") for the removal of a diseased copper beech tree at Sagamore Hill National Historic Site in Oyster Bay, New York. Theodore Roosevelt, the twenty-sixth President of the United States, lived at this site for several years and planted beech trees on that property, including the diseased tree now in need of removal. The solicitation required bidders to "cut and remove [the] Copper Beech Tree" from the site and "dispose of all debris." Dkt. No. 1-2 at 3.

LGS submitted a timely bid wherein it represented that it would remove the tree for $0.01. On March 20, 2019, the contracting officer emailed LGS seeking clarification on LGS's rationale for its low quote. Dkt. No. 1-3. LGS replied that "this tree has historic and communal value." Id. LGS added that removing the tree would be "an honor" and that LGS "would greatly appreciate the opportunity." Id. The next day, the contracting officer awarded LGS the contract. Dkt. No. 1-4.

On March 28, 2019, the contracting officer notified LGS that it could not proceed with the tree's removal due to "concerns that the National Park Service has with disposition of the [tree] materials." Dkt. No. 1-5. The following day, LGS explained its intention to realize "post work profits" from its tree's removal—that is, to resell the wood for profit. Dkt. No. 1-6. LGS also outlined that it was "standard practice for companies such as LGS to benefit financially from all of our work including the sale of the materials recovered as a result of our work." Id. On August 19, 2019, the National Park Service terminated LGS's contract for convenience. Dkt. No. 8 at 3; Dkt. No. 10 at 14. LGS alleges that on June 25, 2019, the National Park Service engaged a third party for tree removal. Compl. ¶ 24. According to LGS, that party has since removed branches and limbs and plans to remove the remainder of the tree. Id. ¶¶ 24–25.

On June 27, 2019, LGS filed a two-count complaint in this Court. In Count I, LGS asks the Court to enjoin the National Park Service from allowing the third-party contractor to remove and retain the copper beech tree. Id. ¶¶ 27–32. Count II alleges that the National Park Service has taken the tree, which LGS contends is a taking of its property without just compensation in violation of the Fifth Amendment. Id. ¶ 33–37. Defendant moved to dismiss both counts, and this issue was fully briefed by October 7, 2019.

Discussion

I. This Court Does Not Have Jurisdiction to Grant Injunctive Relief to LGS.

   A. Standard of Review

When deciding a Rule 12(b)(1) motion to dismiss, the Court must assume that the facts alleged in the complaint are true and draw reasonable inferences in the non-movant's favor. See Erikson v. Pardus, 551 U.S. 89, 94 (2007). A plaintiff must establish that jurisdiction exists "by a preponderance of the evidence." M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327 (Fed. Cir. 2010). In determining whether a plaintiff has met this burden, the Court may look "beyond the pleadings and 'inquire into jurisdictional facts' in order to determine whether jurisdiction exists." Lechliter v. United States, 70 Fed. Cl. 536, 543 (2006) (quoting Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991)). If the Court finds that it lacks subject matter jurisdiction, it must dismiss the claim. RCFC 12(h)(3); see also Gluck v. United States, 84 Fed. Cl. 609, 614 (2008).

   B. Injunctive Relief is Unavailable to Plaintiff in this Circumstance.

The United States Court of Federal Claims is a court of limited jurisdiction. 28 U.S.C. § 1491(a)(1); see also Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997). The Tucker Act confers jurisdiction on this Court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

The Court may award equitable relief only in a few statutorily defined circumstances. See, e.g., United States v. King, 395 U.S. 1, 2 (1969); Suess v. United States, 33 Fed. Cl. 89, 92 (1995); Marathon Oil Co. v. United States, 17 Cl. Ct. 116, 119 (1989). Specifically, the Court may grant equitable relief in (1) bid protests pursuant to 28 U.S.C. § 1491(b)(2), or (2) in cases where the claim for equitable relief is related to a claim for monetary relief pending before this court. See Terran v. Secretary of Health & Human Servs., 195 F.3d 1302, 1309 (Fed. Cir. 1999); Nat'l Air Traffic Controllers Ass'n v. United States, 160 F.3d 714, 716 (Fed. Cir. 1998). In other words, in cases not involving bid protests the Court of Federal Claims may only grant equitable relief when "it is tied and subordinate to a money judgment." Stephanatos v. United States, 81 Fed. Cl. 440, 445 (2008), aff'd, 306 F. App'x 560 (Fed. Cir. 2009) (internal citation omitted).

A contractor's challenge to the Government's contract administration is not a bid protest. See MLS-Multinational Logistics Servs., Ltd. v. United States, 143 Fed. Cl. 341, 366 (2019); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 715 (2010) ("The court's bid protest jurisdiction does not extend to matters of breach or 'pure

3

contract disputes.'" (internal citation omitted)).  Once a party becomes an awardee, they are no longer an "interested party" with standing to bring a bid protest claim under 28 U.S.C. § 1491(b).  See MLS-Multinational Logistic Servs., 143 Fed. Cl. at 364; Kellogg Brown & Root Servs., Inc. v. United States, 117 Fed. Cl. 764, 769 (2014) (defining "interested part[ies] for bid protest purposes as actual or prospective bidders or offerors" (internal citation omitted)).  Instead, the Contract Disputes Act ("CDA") governs an awardee's claim that arises from a contract.  See Kellogg Brown & Root Servs., 117 Fed. Cl. at 769; Frazier v. United States, 79 Fed. Cl. 148, 157 (2007).  For example, a dispute regarding a termination for convenience arises out of a contract and therefore falls under the CDA.  See Davis/HRGM Joint Venture v. United States, 50 Fed. Cl. 539, 544 (2001) (holding that a termination for convenience claim "does not fall within the express language of § 1491(b) because it does not relate to an interested party's objection to a solicitation, a proposed award, or an award"); see also Cecile Indus., Inc. v. Cheney, 995 F.2d 1052, 1055 (Fed. Cir. 1993).

This case presents a clear cut outcome.  LGS erroneously construes the National Park Service's termination of its contract as a bid protest action rather than a contract claim under the CDA.  See Compl. At ¶¶ 9–11 (citing 28 U.S.C. § 1491(b)(1)); Dkt. No. 9 at 2–3.  Rather, the basis for LGS's claim is the termination of its contract.  See Griffy's Landscape Maint. LLC v. United States, 51 Fed. Cl. 667, 673 (2001) (holding that a contract awardee may not challenge the decision to terminate by invoking the court's bid protest jurisdiction).  LGS's decision to allege a violation of the FAR does not change the essential character of this action, a challenge to the administration of a contract, to bring it under the Court's bid protest jurisdiction.  Compl. ¶ 11 (citing FAR §§ 1.602-1(b), 1.602-2(b)).  In fact, LGS concedes that "[t]he Park Service's bad-faith termination amounts to breach of contract."  Dkt. No. 10 at 14.  Therefore, LGS has failed to raise a valid claim for equitable relief.

### C. Plaintiff's Claim for Breach of Contract is Not Ripe.

Even if LGS had brought a claim for breach of contract, the Court would not have jurisdiction.  The Court must dismiss any unripe claims.  See, e.g., Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186-87 (1985).  Breach of contract claims ripen once a claim is presented to and denied in a final decision from a contracting officer.  See, e.g., England v. Swanson Grp., Inc., 353 F.3d 1375, 1379 (Fed. Cir. 2004); Tidewater Contractors, Inc. v. United States, 107 Fed. Cl. 779, 783–84 (2012) (citing 41 U.S.C. § 7103(f)(2)(B)).  Under the CDA, a contractor must submit a written claim to the contracting officer within six years of the accrual of the claim.  See 41 U.S.C. § 7103(a)(1); Tidewater Contractors, Inc., 107 Fed. Cl. at 783.  The Federal Circuit has held that a contracting officer's final decision is a "jurisdictional prerequisite" to filing an appeal with the Court.  Sherman Co. v. United States, 2 F.3d 1564, 1569 n.6 (Fed. Cir.

1993), overruled on other grounds, Reflection, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995).

Here, LGS has not alleged that it has taken these necessary steps to first perfect its claim. Therefore, LGS's claim is unripe, and the Court lacks subject-matter jurisdiction over Count I. See 41 U.S.C. § 7103(a). Count I of LGS's complaint is therefore DISMISSED.

## II. LGS Has Not Stated a Claim for a Taking Pursuant to the Fifth Amendment.

### A. Standard of Review

When considering a motion to dismiss a complaint for failure to state a claim upon which relief may be granted under Rule 12(b)(6), the Court accepts as true all factual allegations submitted by the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). For the plaintiff to survive dismissal, the Court, viewing the facts in the light most favorable to the plaintiff, must conclude that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The plaintiff's factual allegations must be substantial enough to raise the right to relief above the speculative level. Twombly, 550 U.S. at 545; Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 938 (Fed. Cir. 2008).

### B. Fifth Amendment Takings Claim

The Fifth Amendment of the U.S. Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. A takings claim requires a two-part analysis. "First, the court determines whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking. Second, if the court concludes that a cognizable property interest exists, it determines whether that property interest was 'taken.'" Acceptance Ins. Cos., Inc. v. United States, 583 F.3d 849, 854 (Fed. Cir. 2009) (citations omitted). "The concept of a taking has limited application when the parties' rights have been voluntarily created by contract." Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 656 (2003). Thus, to defeat the Government's motion to dismiss, LGS must plead sufficient facts that, when accepted as true, demonstrate it had a cognizable property interest in the beech tree. LGS must also establish that the Government's permitting another company to remove pieces of the tree constituted a taking of that interest. LGS has done neither.

#### 1. LGS Has Not Alleged a Property Interest in the Tree.

The Constitution "neither creates nor defines the scope of property interests compensable under the Fifth Amendment." Maritrans, Inc. v. United States, 342 F.3d

1344, 1352 (Fed. Cir. 2003) (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). Instead, courts look to "'existing rules and understandings' and 'background principles' derived from an independent source, such as state, federal, or common law" to define the requisite property interest to establish a taking. Id. (citing Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1030 (1992)). This broad standard for identifying Fifth Amendment property interests encompasses both tangible rights such as real and personal property as well as intangible rights such as contracts. See Horne v. Dep't of Agriculture, 135 S. Ct. 2419, 2425–26 (2015); Lynch v. United States, 292 U.S. 571, 579 (1954); Cienega Gardens v. United States, 331 F.3d 1319, 1329 (Fed. Cir. 2003) (recognizing "ample precedent for acknowledging a property interest in contract rights under the Fifth Amendment").

LGS has not pled facts to show that it possesses a legally cognizable Fifth Amendment property interest in the beech tree. Neither party disputes the validity of the contract between LGS and the National Park Service. LGS, however, claims that the contract gave it a right to possess the copper beech tree itself and that the Government's actions amounted to a taking of that property interest. Compl. ¶ 34.

The National Park Service awarded the contract to remove the decaying copper beach tree to LGS on March 21, 2019. Id. ¶ 16. In the contract, the Government was simply paying for a service: the removal of a diseased tree. It was not until March 29, 2019, that LGS revealed its intention to realize "post work profits" from its tree removal; that is, to resell the wood for profit. Id. ¶ 20. In fact, LGS rationalized its low bid to the contracting officer prior to its award of the contract. Dkt. No. 1-3. LGS explained that the tree had "historic and communal value," and that removing it would be "an honor." Id. These pre-award representations do not indicate that LGS intended to profit from a decaying tree after its removal. Rather, these statements make LGS's actions appear to be more charitable in nature and grounded in national historical pride and civic duty.

Accordingly, LGS has not pled facts to show that it possesses a legally cognizable Fifth Amendment property interest in the tree and Count 2 of its complaint is DISMISSED.

> 2. The Government Has Not Taken LGS's Property

In the alternative, should LGS possess a vested property right, that right has not been taken. This Court has had the opportunity to address this precise issue:

> If a plaintiff claims he is owed something to which he also claims a contractual right, he cannot also allege a takings claim because he is not alleging that the Government has "taken" his contract remedy. Under such circumstances, the plaintiff is claiming he entered into a contract with the Government that the Government subsequently breached, leaving the plaintiff

> with contract damages. The amount of those damages is also the property the plaintiff claims was taken. In other words, "[t]he property rights allegedly taken were the contractual rights themselves, not a separately existing property interest." Therefore, the plaintiff's remedy lies in contract, and he cannot pursue a takings claim to recover his alleged contract damages.

Snyder & Assocs. Acquisitions LLC v. United States, 133 Fed. Cl. 120, 126 (2017) (quoting Westfed Holdings, Inc. v United States, 52 Fed. Cl. 135, 152 (2002)) (other citations omitted). In other words, if the terms of the parties' contract govern the right at issue, the proper remedy lies in contract and not takings. See A&D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1156 (Fed. Cir. 2014) (explaining that takings liability is redundant when the government is subject to contractual remedies); Tamerlane, Ltd. v. United States, 80 Fed. Cl. 724, 738 (2008) ("[W]hen a contract between a private party and the Government creates the property right subject to a Fifth Amendment claim, the proper remedy for infringement lies in contract, not taking."). Moreover, a viable breach-of-contract claim trumps a takings claim. See Hughes Commc'ns Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001); Century Expl. New Orleans, Inc. v. United States, 103 Fed. Cl. 70, 79 (2012).

LGS's Fifth Amendment argument simply is misplaced. LGS relies on Barlow & Haun, Incorporated v. United States, 87 Fed. Cl. 428 (2009). In Barlow, the Court held that a more fully developed record was necessary to determine whether the Government's suspension of oil drilling constituted a taking of plaintiffs' leases to drill. See id. at 439. The Court denied the Government's motion to dismiss because the plaintiff alleged that not only had the Government "taken the value of the oil and gas leases" but it had also taken the "private property vested in the oil and gas leases." Id.

The Government distinguishes this case from Barlow, arguing that "LGS's takings claim is founded entirely on the theory that its contract created all of the rights to the property that allegedly was taken." Dkt. No. 10 at 10 (citing Compl. ¶ 4). The Government contends that LGS's taking argument must fail because it is unable to identify a property right that exists independent from its contract with the National Park Service. See id. at 8, 10 n.3 (noting that the cases cited in LGS's complaint involve property rights that "f[e]ll outside the rights granted under the [contract]," including property rights originating from the Nuclear Waste Policy Act of 1982 and the Atomic Energy Act (internal citations omitted)).

While LGS undoubtedly possesses a contract right that constitutes an established property interest, the Court agrees with the Government that LGS has not alleged any facts to suggest that its claims exist independently of its contract with the National Park Service. Unlike in Barlow, LGS's contractual rights originate from its tree removal contract that it entered with the National Park Service. As a result, LGS's remedies lie in breach of

7

contract claims, not the constitutional protection of private property rights.  See Clear Creek Cmty. Servs. Dist. v. United States, 132 Fed. Cl. 223, 261–62 (2017).

LGS, however, can still seek contract remedies with the National Park Service and, once ripe, if the Court determines a breach occurred, collect damages for that breach. Accordingly, LGS's claim more properly sounds in breach of contract; it has not stated a valid takings claim.  The Court GRANTS Defendant's motion to dismiss Count II.

## Conclusion

Based upon the foregoing, the Court GRANTS the Government's motion to dismiss as to all Plaintiffs' claims.  The Clerk shall enter judgment in favor of the Government.  No costs.  Plaintiff Looks Great Services Inc.'s complaint is dismissed without prejudice.

IT IS SO ORDERED.

s/ Thomas C. Wheeler<br>
THOMAS C. WHEELER<br>
Judge